## IN THE UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| HAROLD DEAN YOUNG, | : | Case No. 2:25-cv-1459 |
| | : | |
| Plaintiff, | : | |
| | : | |
| | : | Judge Algenon L. Marbley |
| vs. | : | Magistrate Judge Kimberly A. Jolson |
| | : | |
| CITY OF COLUMBUS, OHIO, et al., | : | |
| | : | |
| Defendants. | : | |
| | : | |

## ORDER AND REPORT AND RECOMMENDATIONS

Before the Court is Plaintiff's Amended Complaint. (Doc. 12). The Court previously granted Plaintiff leave to proceed *in forma pauperis*, screened his Complaint under 28 U.S.C. § 1915(e)(2), and recommended dismissal of his case. (Docs. 7, 9). In response to Plaintiff's objection that "dismissal without leave to amend is improper" (Doc. 10 at 2, 6), the Undersigned gave Plaintiff thirty days to file an amended complaint (Doc. 11). Plaintiff did so on April 29, 2026. (Doc. 12). Plaintiff's Amended Complaint became the operative complaint upon filing and supersedes his original Complaint. Plaintiff, however, is cautioned that he will not be given unlimited opportunities to amend his complaint. *See Kanu v. Siemens PLM*, No. 1:18-CV-38, 2019 WL 1090398, at *2 (S.D. Ohio Mar. 8, 2019), *report and recommendation adopted*, No. 1:18-CV-38, 2019 WL 4110434 (S.D. Ohio Aug. 29, 2019) ("[J]ustice simply does not require this Court to permit a pro se plaintiff unlimited opportunities to amend [their] complaint, in hopes of eventually stating some claim.").

Accordingly, the Undersigned **WITHDRAWS** the prior recommendation that Plaintiff's original Complaint be dismissed (Doc. 9), and this matter is now before the Court for a *sua sponte*

review of Plaintiff's Amended Complaint to determine whether the Amended Complaint, or any portion of it, should be dismissed because it is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief (Doc. 12). *See* 28 U.S.C. § 1915(e)(2)(B).

Also before the Court is Plaintiff's Motion for Expedited Discovery to Identify John Doe Defendants. (Doc. 13).

For the following reasons, the Undersigned concludes that the Court should dismiss Plaintiff's Amended Complaint in its entirety because he fails to state any claim upon which relief can be granted and deny his Motion for Expedited Discovery as moot.

## I.        SCREEN OF AMENDED COMPLAINT

Previously, the Court construed Plaintiff's original complaint as raising a Fourth Amendment claim of unlawful seizure again Columbus Police Department officers ("Officers"); Fourteenth Amendment claims of due process violations against the Columbus Police Department; a *Monell* liability claim against the City of Columbus; and state law claims of negligence and intentional infliction of emotional distress against all Defendants. (Doc. 8; Doc. 9 at 5). Plaintiff's claims stem from what he calls an unlawful arrest, detention, and seizure of property on November 19, 2025, that led to police releasing Plaintiff in freezing 44-degree rain, wearing only shorts and a t-shirt, and in distress—crying, humiliated, and begging for help. (Doc. 8 at 3).

Plaintiff's Amended Complaint is substantially similar to his original Complaint with three primary exceptions: (1) he attempts to identify which Officers committed each unconstitutional act alleged in the original Complaint; (2) he replaces his state-law claims accusing Defendants of negligence and intentional infliction of emotional distress with a Fourteenth Amendment state-created danger claim; and (3) he adds an "Individual Liability" claim alleging that each Officer participated directly, or failed to intervene, in unconstitutional conduct. (Doc. 12 at 3–5). But

2

Plaintiff's amendments are not enough to survive the Court's review under 28 U.S.C. § 1915(e)(2)(B).

### A.     Capacity

To begin, Plaintiff does not state whether he is suing Defendants in their official capacities or their individual capacities.  To the extent Plaintiff brings claims seeking monetary damages against Defendants in their official capacities, those claims are subject to dismissal.  (Doc. 12 at 5).  Absent an express waiver, a state is immune from damages suits under the Eleventh Amendment.  *See Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 144 (1993) (collecting cases); *Edelman v. Jordan*, 415 U.S. 651, 663 (1974).  The State of Ohio has neither constitutionally nor statutorily waived its Eleventh Amendment immunity in the federal courts.  *See Johns v. Supreme Court of Ohio*, 753 F.2d 524 (6th Cir. 1985); *State of Ohio v. Madeline Marie Nursing Homes No. 1 and No. 2*, 694 F.2d 449, 460 (6th Cir. 1982).  The Eleventh Amendment bar extends to actions where the state is not a named party but where the action is essentially one for the recovery of money from the state.  *Edelman*, 415 U.S. at 663 (citations omitted).  A suit against Defendants in their official capacities would, in reality, be a way of pleading the action against the entity of which Defendants are agents.  *Monell v. Dep't of Soc. Servs. of New York*, 436 U.S. 658, 690 (1978).  Thus, actions against state officials in their official capacities are included in this bar.  *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 70–71 (1989); *Scheuer v. Rhodes*, 416 U.S. 232, 237 (1974); *Colvin v. Caruso*, 605 F.3d 282, 289 (6th Cir. 2010) ("[A]n official-capacity suit against a state official is deemed to be a suit against the state and is thus barred by the Eleventh Amendment, absent a waiver." (citation and ellipsis omitted)).  Because all of the properly named Defendants are immune from suit in their official capacities to the extent that Plaintiff seeks monetary damages, the Court should dismiss with prejudice the claims against those Defendants in their official capacities.

### B. Count I – Fourth Amendment (Unlawful Arrest/Seizure)

Next, Plaintiff contends that Officer Bell (#2900), as well as other John Doe officers, arrested Plaintiff on November 19, 2025, for traffic-related offenses before properly verifying that a warrant existed. (Doc. 12 at 2–3). Plaintiff suggests that a warrant should not have been issued or executed because he already had a scheduled court date on the charges for which the warrant was issued. Plaintiff further asserts that he was transported and detained without probable cause.

At base, Plaintiff raises a wrongful arrest claim. False or wrongful arrest claims can be brought under either federal or state law. *Voyticky v. Village of Timberlake*, 412 F.3d 669, 677 (6th Cir. 2005) (citing *Thacker v. City of Columbus*, 328 F.3d 244, 258 (6th Cir. 2003)). Plaintiff's Complaint does not specify whether he intended to bring his wrongful arrest claim under federal law or state law. Thus, the Undersigned addresses his claim under both standards. "A false arrest claim under federal law requires a plaintiff to prove that the arresting officer lacked probable cause to arrest the plaintiff." *Voyticky*, 412 F.3d at 677 (citing *Fridley v. Horrighs*, 291 F.3d 867, 872 (6th Cir. 2002)). "An arrest pursuant to a facially valid warrant is normally a complete defense to a federal constitutional claim for false arrest or false imprisonment made pursuant to § 1983." *Id.* (citing *Baker v. McCollan*, 443 U.S. 137, 143–44 (1979)). "Similarly, under Ohio law, an arrest warrant, 'issued by a court, unless utterly void is a complete defense to an action for false arrest or false imprisonment.'" *Id.* (quoting *McFarland v. Shirkey*, 106 Ohio App. 517 (1958)). To defeat the facial validity of a warrant, a plaintiff must prove "by a preponderance of the evidence that in order to procure the warrant the defendant knowingly and deliberately, or with reckless disregard for the truth, made false statements or omissions that created a falsehood and such statements or omissions were material, or necessary, to the finding of probable cause." *Trakhtenberg v. Cnty. of Oakland*, 661 F. App'x 413, 419 (6th Cir. 2016) (cleaned up).

4

Here, Plaintiff argues that there was no probable cause for his arrest.  But that argument misses the mark because he does not dispute that there was a warrant for his arrest.  Instead, he alleges that there should not have been a warrant issued for his arrest because a court date on the same charges had already been set.  That is not the same as asserting that the facts set forth in the warrant could not conceivably constitute an offense or that the court that issued the warrant was without jurisdiction over Plaintiff or the charged offenses.  Although Plaintiff disputes the timing and methodology of the Officers' verification of his arrest warrant, his Amended Complaint does not dispute that they did in fact endeavor to confirm the existence of a warrant for his arrest.  Even if Plaintiff protested that the warrant should not have been issued, or should have been voided, given his pending court date, police officers are "under no obligation to give any credence to a suspect's story or alibi, nor should a plausible explanation in any sense require the officer to forego arrest pending further investigation if the facts as initially discovered provide probable cause." *Criss v. City of Kent*, 867 F.2d 259, 263 (6th Cir. 1988); *Cleveland v. City of Detroit*, 275 F. Supp. 2d 832, 839 (E.D. Mich. 2003) ("Respondent's innocence of the charge contained in the warrant . . . is largely irrelevant to his claim of deprivation of liberty" and "we do not think a sheriff executing an arrest warrant is required by the Constitution to investigate independently every claim of innocence, whether the claim is based on mistaken identity or a defense such as lack of requisite intent." (citation and internal quotation marks omitted)); *Henderson v. Euclid*, No. 101149, 2015 WL 114601, at *7 (Ohio App. Jan. 8, 2015).  Said differently, Plaintiff's allegations fail to state a claim because police officers are not required to forgo arresting a person on facially valid warrant just because the arrestee protests that the warrant is invalid.  Plaintiff did not file the affidavit or warrant, nor did he describe any of the statements made therein—much less attribute those statements to the Officers who arrested him.  Even construing liberally and accepting Plaintiff's

5

allegations as true, the Undersigned concludes that the Court should dismiss Count I without prejudice for failure to state a claim.

### C.    Count II – Fourth Amendment (Unlawful Property Seizure)

Plaintiff next alleges that in connection with his arrest, Officers #1378 and #2522 seized and impounded Plaintiff's vehicle, which was parked on private residential property.  (Doc. 12 at 2).  Plaintiff maintains that there was no warrant, citation, or lawful justification for seizing his automobile.  (*Id.* at 4).

"The Fourth Amendment prohibits unreasonable seizures of personal property, *see Farm Lab. Org. Comm. v. Ohio State Highway Patrol*, 308 F.3d 523, 543 (6th Cir. 2022), but it is not 'unreasonable' within the meaning of the Fourth Amendment for police to seize items in the possession of a person being arrested, *see United States v. Cunningham*, 520 F. App'x 413, 416 (6th Cir. 2013)."  *Black v. City of Royal Oak*, No. 23-12371, 2024 WL 4220711, at *10 (E.D. Mich. Sept. 17, 2024).  Officers may seize items within an arrestee's immediate proximity if incident to a lawful arrest.  *See Davis v. Robbs*, 794 F.2d 1129, 1131 (6th Cir. 1986); *Foster v. Paralexis*, No. 2:18-11290, 2020 WL 4722426, at *14–15 (E.D. Mich. Mar. 23, 2020).

It is unclear from the Complaint whether Plaintiff was arrested in or near his vehicle that was subsequently seized and impounded.  But it is reasonable to infer that he was—Plaintiff states that he was arrested and detained "during an encounter involving alleged traffic-related matters."  (Doc. 12 at 2).  Plaintiff identifies Officer Bell (#2900) as one of the officers involved in detaining Plaintiff.  (*Id.*).  Plaintiff later states that his "vehicle was parked on residential property at the time of the incident[,]" and that Officers #1378 and #2522 were involved in the towing and impoundment of Plaintiff's vehicle.  (*Id.*).  That being so, the seizure of Plaintiff's vehicle was incident to his arrest and therefore did not violate the Fourth Amendment.  Thus, the Undersigned finds that the Court should dismiss Count II without prejudice for failure to state a claim.

### D.      Count III – Fourteenth Amendment (Due Process)

Plaintiff complains that he was detained based on inaccurate or improperly maintained warrant records.  (Doc. 12 at 4).  He asserts that the "governmental failure" to maintain accurate records caused unlawful deprivation of liberty in violation of his Fourteenth Amendment right to due process.  (*Id.*).

"[T]he Fourteenth Amendment's Due Process Clause protects persons against deprivations of life, liberty, or property; and those who seek to invoke its procedural protection must establish that one of these interests is at stake."  *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005).  *See also* U.S. Const. amend XIV, § 1.  Even accepting as true Plaintiff's contention that his arrest warrant was invalid, a search or arrest stemming from negligent police error does not amount to a Fourteenth Amendment violation.  *See Cleveland*, 275 F. Supp. 2d at 839 (finding that a several-days detention under a facially valid warrant does not constitute a due process violation even if it turns out that the detainee was wrongfully arrested) (quoting *Baker*, 443 U.S. at 144).[1]

What's more, Plaintiff does not allege which Officers were responsible for maintaining the allegedly inaccurate records.  This failure is fatal to his claim.  To state a claim against a defendant in his or her individual capacity, a plaintiff must allege personal involvement by the defendant in causing Plaintiff's injury.  *Hardin v. Straub*, 954 F.2d 1193, 1196–98 (6th Cir. 1992).  A party cannot be held liable under Section 1983 unless the party personally participated in, or otherwise authorized, approved, or knowingly acquiesced in, the allegedly unconstitutional conduct.  *Leach v. Shelby Co. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989) ("There is no claim in this case that the

---

[1] The cases cited by Plaintiff do not establish a constitutionally protected liberty interest in the accuracy of a municipality's or court's records.  (Doc. 12 at 4).  In *Baker v. McCollan*, the Supreme Court rejected a claim that the respondent's arrest and detention on the basis of mistaken identity in an otherwise valid warrant did not give rise to a claim under the United States Constitution.  443 U.S. at 143–44.  In *Herring v. United States*, the Supreme Court held, in the context of a criminal case, that the exclusionary rule did not apply to a search or arrest stemming from negligent police recordkeeping errors.  555 U.S. 135, 137, 146–47 (2009).

Sheriff directly participated in or encouraged the alleged deprivations of Leach."). "A plaintiff, even one proceeding *pro se*, must plead sufficient facts to show how each defendant allegedly violated plaintiff's rights." *Johnson v. Chambers-Smith*, No. 2:22-cv-4179, 2023 WL 2555446, at *18 (S.D. Ohio Mar. 17, 2023) (citations omitted), *report and recommendation adopted*, No. 2:22-cv-4179, 2023 WL 6065130 (S.D. Ohio Sep. 18, 2023). "Merely listing names in the caption of the complaint and alleging constitutional violations in the body of the complaint is not enough to sustain recovery under § 1983." *Gilmore v. Corrs. Corp. of Am.*, 92 F. App'x 188, 190 (6th Cir. 2004) (citation omitted). *See also Marshall v. Westcomb*, No. 2:25-cv-144, 2025 WL 2166304, at *6 (W.D. Mich. July 31, 2025) ("Furthermore, any '[s]ummary reference to a single, five-headed Defendants does not support a reasonable inference that each Defendant is liable. . . .'" *Boxill [v. O'Grady]*, 935 F.3d [510,] 518 [(6th Cir. 2019)] (citation omitted)).

The Undersigned concludes that the Court should dismiss Count III without prejudice for failure to state a claim.

### E.        Count IV – Fourteenth Amendment State-Created Danger

Plaintiff then argues that Defendants "affirmatively placed him in danger by releasing him into severe weather conditions without clothing appropriate for the environment or assistance. (Doc. 12 at 4). He contends that Defendants' actions created a "foreseeable and substantial risk of serious harm." (*Id.* at 5).

In the Sixth Circuit, a state-created danger claim has three elements: (1) an affirmative act by the state that creates or increases the risk that an individual will be exposed to private acts of violence; (2) exposure of an individual to a special danger not posed to the public at large; and (3) that the state knew or clearly should have known that its actions specifically endangered an individual. *Kallstrom v. City of Columbus*, 136 F.3d 1055, 1066–67 (6th Cir. 1998). Accepting every allegation as true, Plaintiff's claim fails on the first element. Plaintiff has not alleged facts

from which this Court can infer that the Officers' actions created or increased the risk that Plaintiff would be exposed to private acts of violence.  Where the risk of harm that Defendants' actions posed to Plaintiff stemmed from the environment, rather than private acts of violence, a Fourteenth Amendment state-created danger claim cannot survive.  *See, e.g.*, *McQueen v. Beecher Community Schools*, 433 F.3d 460, 464-65 (6th Cir. 2006) (collecting cases finding either no "affirmative act" or no "risk of private violence to the plaintiff").  Accordingly, the Undersigned finds that the Court should dismiss Count IV without prejudice for failure to state a claim.

## F.  Count V – Municipal Liability (*Monell*)

Plaintiff next alleges that Defendant City of Columbus maintains policies or customs that permit "arrests based on unverified or outdated warrant database information." (Doc. 12 at 5).  He further asserts that the City "failed to properly train police officers on warrant verification procedures" and exhibited "deliberate indifference to constitutional rights." (*Id.*).

"To state a municipal-liability claim under § 1983, the plaintiff must allege the deprivation (1) of a right secured by the Constitution or laws of the United States, (2) that was directly caused by a municipal policy or custom." *Nichols v. Wayne Cnty.*, 822 F. App'x 445, 448 (6th Cir. 2020) (citation omitted) (discussing *Monell*, 436 U.S. 658).  "A plaintiff may prove an unconstitutional 'policy' or 'custom' by demonstrating one of the following: '(1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom of tolerance or acquiescence of federal rights violations.'" *Cline v. Wiedimen*, No. 2:21-cv-112, 2021 WL 123006, at *4 (S.D. Ohio Jan. 13, 2021) (quoting *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013)), *report and recommendation adopted*, No. 2:21-cv-112, 2021 WL 391724 (S.D. Ohio Feb. 4, 2021).

Here, Plaintiff alleges he suffered deprivations of his Fourth and Fourteenth Amendment rights under seemingly three possible theories of *Monell* municipal liability: illegal policies and customs; failure-to-train and supervise; and custom of tolerance.

First, Plaintiff alleges that the City maintains policies or customs that permit arrests based on unverified or outdated warrant database information. (Doc. 12 at 5). In support, he says that officers initially stated that a warrant "may exist" but then did not confirm the existence of a valid warrant before seizing and handcuffing him. (*Id*. at 2). Plaintiff further claims that officers conducted multiple database checks while he remained detained.

The term "'official policy' often refers to formal rules or understandings—often but not always committed to writing—that are intended to, and do, establish fixed plans of action to be followed under similar circumstances consistently and over time." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481–82 (1986). Even accepting Plaintiff's allegations of his arrest and detention as true, he fails to allege facts from which the Undersigned could infer that the City had a "formal" or "fixed" policy of permitting arrests based on unverified or outdated warrant database information. Indeed, Plaintiff fails to allege facts supporting the existence of any policy at all. *See Lipman v. Budish*, 974 F.3d 726, 748 (6th Cir. 2020) (noting a policy is "created through the official acts of the municipality's ultimate decision makers") (citation omitted); *cf. Sistrunk v. City of Hillview*, 545 F. Supp. 3d 493, 502 (W.D. Ky. 2021) (noting that even where a complaint labeled a city's alleged constitutional failing as a "policy," the complaint did not allege facts supporting the existence of a policy).

Here, Plaintiff's conclusory allegations merely assert that the constitutional deprivations he claims he suffered were due to the City's policies and customs. *Cf. Grandizio v. Smith*, No. Civ. 14-3868, 2015 WL 58403, at *6 (D.N.J. Jan. 5, 2015) (stating that a plaintiff "may not simply

10

include a *Monell* claim in his Complaint as a matter of course by making the conclusory allegation that the alleged constitutional deprivations were due to a policy or custom of the Borough. Rather, Plaintiff must allege some actual facts suggesting as much.").  Without more, Plaintiff fails to state a *Monell* claim under the illegal-policies-and-customs theory of liability.

The Undersigned turns next to Plaintiff's accusation that the City fails to properly train officers on warrant verification process.  A municipality's inadequate training constitutes liability under Section 1983 only "when it evinces deliberate indifference for the rights of those with whom the governmental employees have contact, such that the inadequate training may be fairly said to represent the government's policy or custom." *Brown v. Cuyahoga Cnty.*, 517 F. App'x 431, 436 (6th Cir. 2013) (citing *City of Canton v. Harris*, 489 U.S. 378, 388–89 (1989)).  Deliberate indifference, in turn, requires "proof that a municipal actor disregarded a known or obvious consequence of his action." *Connick v. Thompson*, 563 U.S. 51, 61 (2011) (cleaned up).  A plaintiff can meet this "stringent standard" in one of two ways.  Either he must allege (1) "evidence of prior instances of unconstitutional conduct demonstrating that the municipality had notice that the training was deficient and likely to cause injury but ignored it," or (2) "evidence of a single violation . . . accompanied by a showing that the municipality had failed to train its employees to handle recurring situations presenting an obvious potential for such a violation." *Okolo v. Metro Gov't of Nashville*, 892 F. Supp. 2d 931, 942 (M.D. Tenn. 2012) (cleaned up) (quoting *Harvey v. Campbell Cnty.*, 453 F. App'x 557, 562–63 (6th Cir. 2011)); *see also id*. at 943 ("Liability for unconstitutionally inadequate supervision or discipline is treated, for all intents and purposes, as a failure to train."); *cf. Harvey*, 453 F. App'x at 563 ("[M]ere allegations that an officer was improperly trained or that an injury could have been avoided with better training are insufficient to make out deliberate indifference.").

11

Plaintiff has not alleged evidence of prior instances of unconstitutional conduct that would demonstrate the City was on notice that its training or supervision of officers executing arrest warrants was deficient and likely to cause injury. Nor has he pleaded that the City failed to train its officers to handle recurring situations presenting an obvious potential for such a violation. *Cf. Weaver v. Louisville-Jefferson Cnty. Metro Gov't*, No. 3:24-cv-103, 2024 WL 2819556, at *3 (W.D. Ky. June 3, 2024) (considering allegations of a federal rights violation coupled with news articles and a report detailing a police department's "shortcomings" related to investigatory searches and unreasonable use of force as adequate to state a failure to train claim). At base, Plaintiff fails to specify any facts pertaining to global training or supervision of City officers from which the Undersigned could infer that any constitutional deprivation Plaintiff experienced was related to inadequate training. In fact, Plaintiff's own allegations that officers "conducted multiple database checks while Plaintiff remained detained" (Doc. 12 at 2), belie any suggestion that the City failed to properly train officers on warrant verification process.

Finally, the Undersigned considers Plaintiff's claim suggesting a custom-of-intolerance theory of municipal liability. To state a *Monell* claim under this theory, Plaintiff must allege "(1) a 'clear and persistent pattern' of misconduct, (2) notice or constructive notice on the part of the municipality, (3) the defendant's tacit approval of the misconduct, and (4) a direct causal link to the violations." *Nouri v. Cnty. of Oakland*, 615 F. App'x 291, 296 (6th Cir. 2015) (citation omitted). Plaintiff's claim does not even pass the first hurdle. He alleges no facts suggesting a pattern of misconduct. And that allegation is key to pleading a custom-based *Monell* claim. *Franklin v. Franklin Cnty.*, 115 F. 4th 461, 472 (6th Cir. 2024) (stating that the crux of a custom-based *Monell* claim is a showing of "particularized" similarities between the prior incidents and the instant case). Plaintiff's own experience is not enough. *Cf. id.* ("[T]his court has observed that

12

a plaintiff 'cannot rely solely on a single instance to prove the existence of an unconstitutional custom.'" (citation omitted)).  In addition, Plaintiff has not alleged any facts suggesting that the City had notice of any pattern of misconduct, that it tacitly approved of the misconduct, or any causal link to the constitutional violations he now claims.

The Undersigned recognizes that at this stage of the proceedings, Plaintiff need not provide "detailed factual allegations."  But basic pleading requirements demand "well-pleaded factual allegations" that plausibly show the City has a custom of ignoring similar constitutional violations. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007); *see also Burgess*, 735 F.3d at 478 ("[A] custom . . . claim requires a showing that there was a pattern of . . . similar claims.").  Because Plaintiff has not met this requirement, he should not be permitted to proceed on this theory of *Monell* liability.

As a final note, to the extent that Plaintiff names the City of Columbus as a defendant under any theory of liability other than *Monell*, his claim should be dismissed.  *See, e.g.*, *Monell*, 436 U.S. at 694 ("a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents.").  In sum, the Undersigned recommends that the Court dismiss Count V without prejudice for failure to state a claim.

### G.	Count VI – Individual Liability

Finally, Plaintiff brings a claim titled "Individual Liability." (Doc. 12 at 5).  As discussed more fully above, to state a claim against a defendant in their individual capacity, a plaintiff must allege personal involvement by the defendant in causing Plaintiff's injury.  *Hardin*, 954 F.2d at 1196–98.  A party cannot be held liable under Section 1983 unless the party personally participated in, or otherwise authorized, approved, or knowingly acquiesced in, the allegedly unconstitutional conduct.  *Leach*, 891 F.2d at 1246.  "A plaintiff, even one proceeding *pro se*, must plead sufficient

13

facts to show how each defendant allegedly violated plaintiff's rights." *Johnson*, 2023 WL 2555446, at *18.

Here, Plaintiff lists as Defendants several Columbus Police Officers—one identified by name and six identified by badge numbers—and states that they "all participated in the arrest, impound, or reckless endangerment." (Doc. 12 at 2). He also lists ten John Doe Officers. (*Id.*). He alleges that "[e]ach Defendant Officer participated directly in, or failed to intervene in, unconstitutional conduct. Officers acted jointly in detention, seizure, and release decisions." (*Id.* at 5). These conclusory assertions are insufficient to support an inference that every Defendant violated Plaintiff's rights when Plaintiff offers allegations ranging from his arrest, to the seizure of personal property and the impound of his car, to his release into freezing rain wearing only shorts and a t-shirt, and to officers driving by and ignoring his obvious distress. The Court finds that the Court should dismiss Count VI without prejudice for failure to state a claim.

## II.      MOTION FOR EXPEDITED DISCOVERY

Plaintiff moves the Court for expedited discovery to identify the John Doe Defendants. (Doc. 13). Based on the foregoing recommendation against any of Plaintiff's claims proceeding for further development, the Undersigned **RECOMMENDS** that the Court **DENY** Plaintiff's Motion for Expedited Discovery **as moot**.

## III.     CONCLUSION

The Undersigned concludes that Plaintiff's Complaint should be dismissed. Accordingly, the Undersigned **RECOMMENDS** the following:

1.      Plaintiff's claims against Defendants in their official capacities for monetary damages be **DISMISSED with prejudice**;

2.      Plaintiff's claims against Defendants in their individual capacities and against the City of Columbus be **DENIED without prejudice**;

14

3.      If the Court adopts the Report and Recommendations, Plaintiff's Motion for Expedited Discovery (Doc. 13) be **DENIED as moot**; and

4.      The Court **CERTIFY** under 28 U.S.C. § 1915(a)(3) that for the foregoing reasons, an appeal of any Order adopting this Report and Recommendations would not be taken in good faith and therefore **DENY** Plaintiff leave to appeal *in forma pauperis*.  *See McGore v. Wrigglesworth*, 114 F.3d 601 (6th Cir. 1997).

**IT IS SO ORDERED AND RECOMMENDED.**

June 25, 2026                                         /s/ *Kimberly A. Jolson*
                                                     KIMBERLY A. JOLSON
                                                     UNITED STATES MAGISTRATE JUDGE

**PROCEDURE ON OBJECTIONS**

Pursuant to Fed. R. Crim. P. 72(b), **WITHIN 14 DAYS** after being served a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations.  This period may be extended further by the Court on timely motion for an extension.  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendation is based in whole or in part upon matters occurring at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Berkshire v. Dahl*, 928 F.3d 520, 530 (6th Cir. 2019).

15

*See also Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

16